**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESSE WILLIAM MENDEZ,<br><br>          Petitioner-Appellant,<br><br>  v.<br><br>GARY SWARTHOUT, Warden,<br><br>          Respondent-Appellee,<br><br>  and<br><br>SCOTT FRAUENHEIM, Warden,<br><br>          Respondent. | No.    16-15026<br><br>D.C. No. 3:13-cv-02797-EMC<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted February 16, 2018
San Francisco, California

Before:  BEA and N.R. SMITH, Circuit Judges, and LASNIK,[**] District Judge.

We write primarily for the parties who are familiar with the underlying facts.

---

        [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

        [**]     The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

This habeas appeal stems from petitioner Jesse Mendez's convictions for the attempted murder of Oakland Police Officer Kevin McDonald and for two firearm-related offenses connected to the same crime. Officer McDonald was shot during a traffic stop of the Camaro that Mendez was driving with Mendez's cousin Jeremiah Dye in the passenger seat.

After unsuccessful direct and collateral appeals in state court, Mendez filed a federal petition for habeas corpus.[1] We review a district court's denial of habeas relief *de novo*, and we may affirm on any ground supported by the record. *Washington v. Lampert*, 422 F.3d 864, 869 (9th Cir. 2005).

We review Mendez's petition under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, we will not grant relief unless his case resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, . . . [or] was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d).

Because Mendez's claims were summarily denied in state court, we "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then [we] must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562

---

[1] The district court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. § 2253.

U.S. 86, 102 (2011).

1. Mendez claims prosecutors failed to disclose evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Prosecutors did not turn over audio recordings about an anonymous informant who said the shooter was hiding nearby. That tip led police to Dye who was killed by police after a standoff.

To succeed on his claim, Mendez must show that the undisclosed evidence was material—that is, he must show "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (marks and citation omitted). A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Strickler v. Greene*, 527 U.S. 263, 289–90 (1999).

Mendez argues that the undisclosed recordings were material because they would have led the informant, whose information implied Dye was the shooter, to testify. The record suggests otherwise. The government turned over to the defense the informant's unregistered phone number. The withheld recordings did not contain additional contact or identifying information. The trial took place three years after the shooting, and every description of the informant emphasized that anonymity was very important to him. Defense counsel tried to contact him but failed, and nothing suggests the recordings would have changed that outcome. Given the cumulative nature of the recordings and other strong evidence of guilt,

3

*see Banks v. Dretke*, 540 U.S. 668, 700–01 (2004), the California Supreme Court could reasonably have concluded that the prospect of securing the informant's testimony was not sufficient to undermine confidence in the trial's outcome, *see Strickler*, 527 U.S. at 289.

Mendez alternatively argues that the content of the recordings would have justified admitting the informant's statements under a hearsay exception. The record, however, does not indicate the statements were "spontaneous." *See* Cal. Evid. Code § 1240; *People v. Becerrada*, 393 P.3d 114, 128 (Cal. 2017). The informant reflected, contacted police, and negotiated and was paid a reward. Nor does the record suggest the statements were evidence "b[earing] persuasive assurances of trustworthiness." *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). The informant saw Mendez and Dye flee from more than 1,200 feet away, and he had an incentive to say the man he saw was the shooter. The California Supreme Court could reasonably have concluded that the prospect of admitting the informant's statements was not sufficient to undermine confidence in the trial's outcome. *See Strickler*, 527 U.S. at 289.

**2.** Mendez further claims that under *Napue v. Illinois*, 360 U.S. 264 (1959), his due process rights were violated when the prosecutor allowed Sgt. Tony Jones, the lead investigator, to testify he had no information pointing to any suspect other than Mendez.

4

Due process prohibits the prosecution from obtaining a conviction by knowingly introducing, soliciting, or allowing false testimony. *Napue*, 360 U.S. at 269. Similar to *Brady* claims, a claim under *Napue* requires the false testimony to have been material. *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003). *Napue*'s materiality standard asks whether "there is any reasonable likelihood that the false testimony *could* have affected the judgment of the jury." *Phillips v. Ornoski*, 673 F.3d 1168, 1189 (9th Cir. 2012), *as amended* (May 25, 2012) (marks and citation omitted).

Assuming Sgt. Jones's testimony was false, the defense was still able to argue repeatedly that Dye was a suspect and the actual shooter, and Sgt. Jones himself referred to Dye as a suspect on cross-examination. The California Supreme Court could reasonably have concluded that the testimony was not material. *See id.*

**3.**     Finally, Mendez invokes various claims of ineffective assistance of counsel. We evaluate claims of ineffective assistance of counsel under the familiar standard that requires Mendez to show (1) counsel's performance was deficient to the point that it fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). To show prejudice, Mendez "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Harrington*, 562 U.S. at 104 (quoting

5

*Strickland*, 466 U.S. at 694).

Mendez claims trial counsel was ineffective for failing to impeach Sgt. Jones's "no other suspects" answer, but we have explained that Sgt. Jones's answer was of only arguable significance. The California Supreme Court could reasonably have concluded that counsel's failure to impeach did not prejudice Mendez.

Mendez also claims trial counsel was ineffective for failing to object to a question the jury asked Sgt. Jones. The jury asked if Sgt. Jones ruled out the Camaro's passenger as the shooter, and Sgt. Jones answered, "Yes." An investigator ruling out a suspect differs from an opinion on guilt or innocence, and tends to assist a trier of fact. *See People v. Coffman*, 96 P.3d 30, 90 (Cal. 2004), *as modified* (Oct. 27, 2004). Mendez fails to show why Sgt. Jones's answer was impermissible, and the California Supreme Court could have reasonably concluded that counsel's failure to object did not prejudice Mendez.

Mendez also argues that his counsel rendered ineffective assistance when he failed to present evidence at trial that Dye was on parole. Mendez reasons that Dye's parole status gave him a more compelling motive than Mendez to shoot Officer McDonald. However, the California Supreme Court could have concluded that there was no reasonable probability of a different outcome if this motive evidence had been presented. Mendez has not shown that parolees who are passengers in cars that commit moving violations are always or regularly searched.

6

Further, had motive evidence been pursued, it could have drawn more focus to a gun that was found. That was not the gun used to shoot Officer McDonald and evidence suggests Dye discarded it as he fled, which would support the view that Dye was not in fact the shooter. An ineffective assistance of counsel claim will fail if the conduct can be readily explained as reasonable trial strategy. *Murtishaw v. Woodford*, 255 F.3d 926, 951 (9th Cir. 2001).

For Mendez's remaining claims of ineffective assistance of counsel, he either raises them for the first time on appeal or did not fairly present them in state court. Those claims are forfeited, *see Miles v. Ryan*, 713 F.3d 477, 494 n.19 (9th Cir. 2013), unexhausted, *see* 28 U.S.C. § 2254(b); *Gentry v. Sinclair*, 705 F.3d 884, 901 (9th Cir. 2013), or both, and they are not properly before us.

**AFFIRMED.**